### GREAT NORTHERN RY. CO. v. UNITED STATES et al.

Civ. No. 3586.

United States District Court
D. Minnesota, Fourth Division.

April 17, 1953.

---

Louis E. Torinus, Jr., and Anthony Kane, St. Paul, Minn. (Edwin C. Matthias, St. Paul, Minn., on the brief), for plaintiff.

Donald E. Van Koughnet, Special Asst. to the Atty. Gen., and Philip Neville, U. S. Atty., St. Paul, Minn. (Edward P. Hodges, Acting Asst. Atty. Gen., and James E. Kilday, Special Asst. to the Atty. Gen., on the brief), for defendant.

Ellis V. Gregory, Attorney, Interstate Commerce Commission, Washington, D. C. (Edward M. Reidy, Chief Counsel, Interstate Commerce Commission, Washington, D. C., on the brief), for intervening defendant Interstate Commerce Commission.

Edwin S. Booth, Jr., Special Atty. Gen. State of Montana (Loble & Loble, Gene A. Picotte, Helena, Mont., Arnold H. Olsen, Atty. Gen. of the State of Montana, and John H. Risken, Secretary-Counsel, Board of Railroad Commissioners, State of Montana, Helena, Mont., on the brief), for intervening defendants Board of Railroad Commissioners of the State of Montana and Valier Community Club.

Art Jardine, Great Falls, Mont., for intervening defendant Montana Western Ry. Co.

Before SANBORN, Circuit Judge, and JOYCE and DONOVAN, District Judges.

PER CURIAM.

This action was brought to enjoin an order of the Interstate Commerce Commission, 275 I.C.C. 512, establishing joint rates (and divisions thereof) over through routes from points on the twenty-mile line of the Montana Western Railway Company—which runs from Valier, Montana, to Conrad, Montana,—to points on the Great Northern Railway, with the interstate lines of which the Montana Western connects at Conrad.

The facts are stated in the Report of the Commission, in the opinion of this Court in 96 F.Supp. 298, and in the opinion of the Supreme Court in United States v. Great Northern Railway Co., 343 U.S. 562, 72 S. Ct. 985, 96 L.Ed. 1142, and need not be repeated. The main issue in this case was whether the Commission might lawfully prescribe such a division of the joint through rates which it established as would enable the Montana Western to meet its financial needs. Stated in another way, the problem was whether the Great Northern, which had for years furnished support to the Montana Western, but had finally refused to advance more funds to meet the necessities of this financially and physically weak road already heavily indebted to the Great Northern, could be required by the Commission to accept a division of rates which would enable the road to survive. Initially we mistakenly believed that what the Commission had done to finance the Montana Western by the prescribed division of rates was contrary to the spirit, if not the letter, of section 15(4) of the Interstate Commerce Act, section 15(4), Title 49 U.S.C.A. We enjoined the Commission's order. 96 F.Supp. 298. On appeal, the Supreme Court ruled that section 15(4) had no application and that the Commission had the right to take into consideration the needs of the Montana Western in prescribing divisions of the joint rates which the Commission was establishing in order that the Montana Western might continue to operate.

The Court said, at page 569 of 343 U.S., at page 990 of 72 S.Ct., 96 L.Ed. 1142:

"Once joint rates are lawfully established, the Commission is authorized by Section 15(6) to prescribe 'just, reasonable, and equitable divisions' of revenue between the participating carriers and to determine such divisions by giving due consideration to various listed factors, including 'the amount of revenue required' by participating carriers. In Akron, C. & Y. R. Co. v. U. S., (The New England Divisions Case), 1923, 261 U.S. 184, 189–195, 43 S.Ct. 270, 273, 275, 67 L.Ed. 605, this Court held that Section 15(6) was de-

signed for affirmative use in relieving the financial needs of weak carriers."

The concluding paragraph of the Supreme Court's opinion reads as follows:

"We hold that the District Court erred in enjoining the Commission's order as prohibited by Section 15(4). Apart from the question of the Commission's power to establish joint rates, the Commission's order establishing joint rates and divisions in this case is attacked for want of essential findings and for lack of substantial evidence justifying continued operation of this particular carrier. Since it is the practice of this Court not to review an administrative record in the first instance after finding that a lower court has applied an incorrect principle of law, the case is remanded to the District Court for further proceedings not inconsistent with this opinion."

Pursuant to this direction of the Supreme Court, we have conducted a further hearing. The parties have presented oral arguments and submitted briefs upon the questions reserved for our consideration.

The Great Northern insists that the Commission has failed to make essential findings, has resorted to evidence outside the record, has failed to give due consideration to the revenue needs of the Great Northern, has condemned the existing apportionment of grain revenues between these carriers in the absence of an adequate evidentiary basis, and has made an order which will irreparably injure the Great Northern.

We think that a detailed discussion of the contentions of the parties, in view of the decision of the Supreme Court, is not required. The factual situation is virtually undisputed. Under the evidence, we think it was for the Commission to decide whether the continued operation of the Montana Western was justified. That it still had some usefulness to grain growers and grain elevator operators in the territory served by it is apparent. If it was not to be abandoned, some means had to be provided for its continued operation. The Commission, not unreasonably, regarded the Montana Western as being constructively a sort of dependent branch or adjunct of the Great Northern, which had not yet become completely useless or obsolete and which in the public interest ought not to be left without means to operate. The Great Northern criticises the reasons which the Commission gave and the comparisons which it made in support of its conclusion that the division of the joint rates which it has prescribed was reasonable and not unlawful.

We are of the opinion that nothing which the Great Northern now argues would justify this Court in enjoining further the order of the Commission. The power of the Commission to make such an order has now been definitely established, and the propriety of making the order was, we think, under the undisputed facts, for the Commission, and not for this Court, to decide. That the Commission reasonably might have made different findings and have reached a different conclusion is of no help to the Great Northern. It is elementary that where different inferences reasonably may be drawn from undisputed facts, it is for the trier of the facts to say what inference shall be drawn.

We conclude that there was a rational basis in the evidence and the law for the order of the Commission, and that its findings are adequate to sustain its order.

The injunction heretofore granted is vacated and the complaint is dismissed. Let judgment be entered accordingly.